UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAREN JUCKETT, on behalf of K.J.,

**REPORT AND
RECOMMENDATION**

Plaintiff,

09-CV-708
(FJS/VEB)

V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

_____

## I. INTRODUCTION

In May of 2006, Plaintiff Karen Juckett filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her daughter, K.J. ("Claimant"), alleging disability based upon mental impairments.[1]  The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, Irwin M. Portnoy & Associates, PC, Irwin M. Portnoy, Esq., of counsel, commenced this action on June 19, 2009, by filing a Complaint in the United States District Court for the Northern District of New York.  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 14, 2011, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation

---

[1]K.J. is a minor.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, she will be referred to as "Claimant" in this Report and Recommendation.

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 23).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff is the mother of Claimant, a minor child.  On May 16, 2006, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning on September 23, 1995 (Claimant's date of birth). (T at 47-52).[2]  The application was denied initially.  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  On September 9, 2008, a hearing was held before ALJ Robert Wright.  (T at 215-31).  Plaintiff and Claimant appeared at the hearing, along with their attorney.  Plaintiff and Claimant both testified.

On September 19, 2008, ALJ Wright issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 12-25).   The ALJ's decision became the Commissioner's final decision on May 14, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

On June 19, 2009, Plaintiff, acting on Claimant's behalf, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on October 5, 2009. (Docket No. 9).  Plaintiff filed a supporting Brief on November 30, 2009.  (Docket No. 12). The Commissioner filed a Brief in opposition on January 14, 2010. (Docket No. 14).  With

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8)

2

leave of the Court, Plaintiff submitted a reply brief on February 12, 2010. (Docket No. 20). The Commissioner was given the opportunity to file a sur-reply brief, but declined to do so. (Docket No. 22).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, this Court recommends that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for the calculation of benefits.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and

3

it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in

4

substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL

21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ noted that Claimant was born on September 23, 1995, and was therefore a "school-age child" as defined pursuant to 20 CFR § 416.926a(g)(2) on May 16, 2006, the date the application for benefits was filed, and was an "adolescent" as of September 19, 2008, the date of the ALJ's decision.  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. He further determined that Claimant experienced learning disabilities and borderline intellectual functioning, which he designated as "severe" under the Social Security Act. (T at 15).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 16).  The ALJ also concluded that Claimant does not have an impairment or combination of impairments that functionally equals one or more of the impairments set forth in the Listings. (T at 16).

As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation with regard to attending and completing tasks; (3) less than marked limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for himself; and (6) no limitation with regard to health and physical well-being. (T at 18-24).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application for benefits was filed.  (T at 24-25).

As noted above, the ALJ's decision became the Commissioner's final decision on May 14, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

### 2.     Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed.  In support of this position, she offers two (2) principal arguments.  First, Plaintiff contends that the ALJ erred by concluding that Claimant's impairment did not meet Listing § 112.05.  Second, Plaintiff challenges the ALJ's functional equivalence assessment.  This Court will address both arguments in turn.

### a.     Listing § 112.05

Impairments listed in Appendix 1 of the Regulations (the "Listings") are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

To meet or medically equal the impairment set forth in § 112.05 of the Listings (the Listing for Mental Retardation), the claimant's impairments must be "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Further, in addition to satisfying this diagnostic description, the claimant must show that he or she meets one of the six subparts of the Listing (112.05(A) - 112.05(F)).

In this case, Plaintiff argues that Claimant's impairments meet or medically equal the

8

requirements set forth in Subparts C and D of §112.05.  To satisfy Subpart (C), the claimant must have "[a] valid verbal, performance, or full scale IQ of 59 or less." To satisfy Subpart (D), the claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70" and "a physical or other mental impairment imposing an additional and significant limitation of function."

In this case, IQ tests performed in January of 2006 indicated that Claimant had a verbal comprehension score of 59 (0.3rd percentile), perceptual reasoning score of 90 (25th percentile), working memory score of 65 (1st percentile), processing speed score of 88 (21st percentile), and a full scale IQ of 70 (2nd percentile). (T at 110).  In June of 2008, Dr. Seth Rigberg, a consultative examiner, performed IQ testing. Dr. Rigberg's testing indicated a verbal comprehension score of 55, perceptual reasoning index of 79, working memory index of 88, processing speed index of 106, and full scale IQ of 74. (T at 146).

The ALJ noted the above-referenced IQ scores, stated that he had "carefully considered" Listing § 112.05, and concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, including, in particular, § 112.05. (T at 16).  In support of this finding, the ALJ noted the "wide variability in the claimant's test scores," the lack of "evidence that claimant suffers from mental retardation," and "the lack of significant adaptive deficits." (T at 16).

This Court finds that the ALJ's decision cannot be sustained.  The ALJ's conclusion that Claimant's impairments do not meet or medically equal Subparts (C) and (D) of Listing §112.05 is not supported by substantial evidence and from the record it is not clear that the ALJ applied the appropriate legal standard.

9

### i.      Subpart C

As noted above, IQ testing indicated verbal comprehension scores of 59 in January of 2006 and 55 in June of 2008 (just three months before the ALJ's decision). These scores were sufficient to satisfy §112.05 (C) of the Listings, which requires "[a] valid verbal, performance, or full scale IQ of 59 or less." The ALJ mentioned the verbal comprehension scores in his general discussion of the record (T at 15-16), but did not discuss the scores in the section of his decision addressing the step three analysis (*i.e.* the determination as to whether Claimant's impairments met or medically equaled an impairment set forth in the Listings) and did not explain why these scores were not sufficient to satisfy Listing § 112.05 (C).

The Commissioner defends the ALJ's decision on several grounds. First, the Commissioner notes that Claimant's school psychologist and the consultative examiner both indicated that Claimant had a learning disability, but did not diagnose mental retardation. (T at 110, 147). Second, the Commissioner points out that, as indicated by the ALJ, there was significant variation in Claimant's test scores, from a low score of 55 with regard to verbal comprehension to a high of 106 in processing speed index. (T at 145-46). Third, the Commissioner suggests, without supporting citation or explanation, that the verbal IQ scores obtained in 2006 and 2008 may not, in fact, be "verbal IQ scores," within the definition of the Listing. Fourth, the Commissioner contends that the ALJ acted within his discretion in reconciling the varying IQ scores, rejecting certain of the scores as "invalid," and concluding that Claimant did not satisfy the Listing.

The Commissioner's arguments are utterly unpersuasive. The Listing does not require a diagnosis of mental retardation. As such, the fact that the school psychologist

10

and consultative examiner referenced a learning disability or "borderline intellectual functioning" (as opposed to mental retardation) is inapposite.

With regard to the "variability" in the IQ test scores, there was no material variability with respect to Claimant's verbal IQ scores, both of which were low enough to satisfy the requirements of Subpart (C) of Listing §112.05. Moreover, with respect to the "variability" between the different types of scores (e.g. verbal vs. processing speed), the Listings specifically provide that "where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, *the lowest of these* is used in conjunction with listing 112.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.00 (D)(9). As such, the variance between the different scores within each test was irrelevant, as the ALJ was obliged per the applicable Regulations to use the lowest score, which in each case was the verbal score.

The Commissioner's conclusory assertion that the ALJ could have rejected the verbal scores as not qualifying as "verbal IQ scores" within the meaning of Listing § 112.05 is unsupported by any citation or explanation as to what does constitute a "verbal IQ score" and/or why the scores in question even arguably fall outside the scope of that definition. Further, the ALJ did not even reference the verbal IQ scores in the context of his step three analysis, let alone reject those scores based upon the dubious ground advanced by the Commissioner. This Court may not re-weigh the evidence and may not "create post-hoc rationalizations to explain the . . . treatment of evidence when that treatment is not apparent from the [underlying] decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir.2005); see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)); see also Melville v. Apfel,

11

198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the Court] properly affirm an administrative action

on grounds different from those considered by the agency") (citing SEC v. Chenery Corp.,

332 U.S. 194, 196 (1947)).

Lastly, this Court rejects the suggestion that the ALJ acted within his discretion in

weighing competing IQ scores.  This Court recognizes that the federal circuit courts have

generally held that an ALJ may reject an IQ score as invalid when it is inconsistent with the

record.[3]

However, whatever discretion the ALJ had in this case with regard to the evaluation

of competing IQ scores was not properly exercised.  The record contains two verbal IQ

scores that meet the Subpart (C) threshold.  As such, there was no inconsistency to

resolve.  Neither the ALJ or the Commissioner offered any rationale for rejecting those

scores as inconsistent with the record (which demonstrates significant difficulties and

delays in the areas of verbal comprehension) or as otherwise "invalid."  It appears the

Commissioner believes that the ALJ could properly disregard the verbal IQ scores because

---

[3]Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir.2007) (citing Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir.2003); Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir.1998); Muse v. Sullivan, 925 F.2d 785, 790 (5th Cir.1991); Lowery v. Sullivan, 979 F.2d 835, 837-39 (11th Cir.1992)) ("We conclude that it was proper for the ALJ to consider other evidence in the record when determining whether Lax's IQ scores were valid and that the record contains substantial evidence to support a finding that Lax's IQ scores were not an accurate reflection of his intellectual capabilities."); see also Clay v. Barnhart, 417 F.3d 922, 929-31 (8th Cir.2005) (upholding the ALJ's rejection of two sets of IQ scores where the test administrator considered the first set invalid and the report on the second set was sufficiently equivocal as to its validity to allow the ALJ to disregard its conclusions); Brown v. Sec'y of Health & Human Servs., 948 F.2d 268 (6th Cir.1991) (holding that the district court's conclusion that Plaintiff's IQ score was invalid was unsupported by substantial evidence, but not questioning the fact-finder's role in determining the validity of IQ scores); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986) (finding the ALJ's rejection of the Plaintiff's low IQ scores proper where the Plaintiff was close to completing a bachelor's degree and had taught high school algebra); Vazquez ex rel. Jorge v. Barnhart, 2005 WL 2429488, at *8 (S.D.N.Y. Sept. 30, 2005) ("As Jorge has multiple IQ scores both below and above 70, it is for the ALJ to reconcile these scores."); Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (stating that "an ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the record" but finding the Plaintiff's scores were not inconsistent with the record) (quoting Popp, 779 F.2d at 1499-1500).

they were allegedly inconsistent with other aspects of the IQ testing.  As noted above, this is not the appropriate analysis under the Regulations, which required that the lowest score in each set of tests be considered.

The Commissioner's argument might have currency if, by way of illustration, the record had contained two verbal IQ scores, one meeting the Subpart (C) threshold and the other not.  Under such a scenario, the ALJ could, in theory, have accepted the latter score and rejected the former, provided he offered a rationale for finding the latter more consistent with the overall record.  Here, both verbal IQ scores met the threshold and the ALJ provided no rationale for rejecting either score (indeed, it is not even clear that he considered them in connection with his step three analysis).  The ALJ certainly did not provide any analysis that might even arguably support a decision to disregard both verbal IQ scores as "invalid."  Accordingly, this Court finds that the ALJ's conclusion that Claimant's impairments do not meet or medically equal Subpart (C) of Listing §112.05 is not supported by substantial evidence and it is not clear that the ALJ applied the appropriate legal standard.

### ii.    Subpart D

In addition and in the alternative, the ALJ's conclusion that Claimant's impairments do not meet or medically equal Subpart (D) of Listing §112.05 is not supported by substantial evidence.  As noted above, Subpart (D) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70" and "a physical or other mental impairment imposing an additional and significant limitation of function."

There is no question but that Claimant had verbal, performance, and IQ scores of 70 and below.  As discussed above, IQ tests performed in January of 2006 indicated, *inter*

13

*alia*, that Claimant had a verbal comprehension score of 59 (0.3rd percentile) and a full scale IQ of 70 (2nd percentile). (T at 110).  Dr. Rigberg, the consultative examiner, indicated a verbal comprehension score of 55. (T at 146).  Thus, the Subpart (D) question turns on whether Claimant has "a physical or other mental impairment imposing an additional and significant limitation of function."

At step two of the sequential evaluation process, the ALJ concluded that Plaintiff's learning disabilities and borderline intellectual functioning were "severe" impairments as defined under the Act. (T at 15).  There is authority in this Circuit for the proposition that the ALJ's conclusion that Plaintiff's learning disability was a "severe" impairment satisfied the second prong of the Subpart (D) standard. See Castillo v. Barnhart, No. 00-CIV-4343, 2002 WL 31255158, at *8-*12 (S.D.N.Y. Oct. 8, 2002)(collecting cases and holding that "if the additional impairment was 'severe' under section 416.924 (c), then it meets the prong two requirement of 112.05D").

In addition, for the reasons outlined below, the evidence indicates the presence of significant limitations with regard to at least three of the domains of function (namely, attending to and completing tasks, acquiring and using information, and caring for herself), which also satisfies the second prong of §112.05 (D).  Accordingly, this Court finds that the ALJ's conclusion that Claimant's impairments do not meet or medically equal Listing §112.05 (D) is not supported by substantial evidence.

### b.     Functional Equivalence

If the claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing.  Analysis of functionality

14

is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, even if the ALJ was correct in concluding that Claimant's impairments did not meet or medically equal Listing § 112.05, his decision still cannot be sustained because his functional equivalence assessment is not supported by substantial evidence.

### i.   Attending to and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well he or she can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

An adolescent  is expected to pay attention to increasingly longer presentations and

15

discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. He or she should also be able to organize materials and to plan his or her time in order to complete school tasks and assignments. In anticipation of entering the workplace, the adolescent should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting. 20 C.F.R. §416.926a (h)(2)(v).

The Regulations provide examples of limited functioning with respect to this domain. For example, a claimant might have limited functioning if he or she is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; slow to focus on, or fails to complete activities of interest; repeatedly becomes sidetracked from activities or frequently interrupts others; becomes easily frustrated and gives up on tasks; and requires extra supervision to remain engaged in an activity. 20 C.F.R. §416.926a (h)(3).

In the present case, the ALJ concluded that Claimant had less than marked limitation in the domain of attending and completing tasks. (T at 20).  In support of this finding, the ALJ opined that while her teachers noted that "claimant is often easily distracted and anxious in the classroom," projects completed at home are "at grade level." (T at 20).  In addition, while the ALJ referenced reports that Claimant "requires reminders at home and school and displays a short attention span," he found that Claimant's "ability to learn and acquire new information has not been significantly impacted." (T at 20).  This Court finds that the ALJ's assessment is clearly not supported by substantial evidence and cannot be sustained.

In June of 2006, Ms. Genevieve DeBoyoce, Claimant's teacher, assessed  a "serious problem" with regard to focusing long enough to finish assigned activities or tasks

16

and working at a reasonable pace and finishing on time. (T at 104).  Ms. DeBoyoce noted that Claimant attended the "homework club" two to three times per week. (T at 104). Claimant had serious difficulty with regard to these tasks even though the student-teacher ratio was only 15:1. (T at 101).  Ms. DeBoyoce described Claimant as "easily distracted." (T at 102).

In January of 2007, Mrs. Mattice, another teacher, indicated that Claimant had not been "consistently completing homework" and recommended that Claimant attend the "homework club" as much as possible. (T at 123).  In May of 2008, Nancy LaFever, Claimant's special education teacher, opined that Claimant had no problem or only a slight problem with regard to the domain of attending and completing tasks. (T at 126).  Ms. LaFever generally taught Claimant in a highly restricted environment (5:1 for reading and 4:1 for math). (T at 124).  In July of 2008, Nicole Baldner, a school counselor, described Claimant as "highly anxious," which interfered with her ability to "participate in class and complete assignments." (T at 175).  Ms. Baldner assessed an "obvious problem" with regard to organizing personal items or school materials, but otherwise found no problem or slight problems with regard to this domain. (T at 175).

Dr. Schneider, Plaintiff's treating physician, noted that Claimant needed "constant reminders for all daily events at home and at school" and "forgets homework, items for school, . . . appointments . . . class." (T at 183).  Dr. Schneider also indicated that Claimant had a "short attention span." (T at 181).  Dr. Rigberg, the consultative examiner, indicated that attention deficit hyperactivity disorder of the predominantly inattentive type should be ruled out. (T at 147).

The ALJ dismissed the evidence outlined above primarily on two grounds - first, that

17

Claimant completed homework "at grade level" and second, that there was no evidence that her "ability to learn and acquire new information has . . . been significantly impacted." (T at 20).  These grounds are inadequate to sustain the ALJ's overall assessment.

The evidence from Claimant's teachers and treating physician strongly indicates that, outside of a highly restricted special education environment, Claimant has marked limitations with respect to attending to and completing tasks.  In terms of completing homework assignments at "grade level," the record actually documents notable difficulties in completing homework and the need for frequent intensive support with regard to homework projects.  (T at 104, 123, 222).  Indeed, what Claimant's teacher actually indicated was that "written projects done at home are *usually* at grade level," a qualification not recognized by the ALJ. (T at 102)(emphasis added).  Moreover, the fact that Claimant is "usually" able to complete homework "at grade level" with something akin to 1-to-1 attention (either in the "homework club" or at home), does not support a finding that her limitations in this domain are less than marked, given the other limitations noted above. In other words, the fact that Claimant can "usually" perform at grade level in a highly structured or supportive setting does not mean that her ability to attend to and complete tasks is not limited to a material degree.

The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar.

17, 2002) (citing 20 C.F.R. § 416.924c).[4]  In other words, the ALJ was obligated to consider Claimant's level of functioning outside of her structured educational environment.  See id.; see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).

There is no indication that the ALJ considered the effect of the structured setting on Claimant's limitations in this domain.  With regard to evidence of Claimant's limitations outside of the educational environment, Plaintiff testified that Claimant has difficulty completing homework and needed constant reminding to attend to basic activities of daily living. (T at 222-26).   Claimant's treating physician opined that Claimant had a "short attention span" and the consultative examiner indicated that AD/HD was a possibility. (T at 181, 147).  The ALJ did not expressly reconcile this evidence with his findings or (apparently) consider that his assessment was based primarily upon Claimant's performance in a highly structured setting.

The ALJ's reference to a lack of evidence suggesting that "claimant lacks the ability to learn and succeed" is curious, in that this domain addresses the ability to attend to and complete tasks (as opposed to the domain of acquiring and using information).  This domain focuses on, for example, the question of whether the claimant is easily distracted

---

[4]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

and/or whether she can maintain attention and concentration to assigned tasks. 20 C.F.R. §416.926a (h). The record evidence, as outlined above, extensively documents limitations with regard to this domain. The fact that the limitations may be moderated to some degree with significant supports in a highly restricted environment does not support the ALJ's overall assessment of less than a marked limitation in this domain. Moreover, Dr. Rigberg, the consultative examiner, opined that the results of his evaluation were "consistent with cognitive problems that significantly interfere with [Claimant's] ability to function on a daily basis." (T at 147). Contrary to the ALJ's conclusion, this certainly seems to be evidence that Claimant's ability to learn and succeed is impaired to a material degree.

Accordingly, this Court finds that the ALJ's conclusion that Claimant had less than a marked limitation with regard to attending to and completing tasks is not supported by substantial evidence and it is not clear that the ALJ applied the appropriate legal standard.

### ii.    Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g).

A school-age child (*i.e.* at least six, younger than twelve) should be able to read, write, perform math, and discuss history and science. The child should be able to demonstrate these skills both in academic situations and in daily living. 20 C.F.R. § 416.926a(g)(2)(iv).

An adolescent is expected to demonstrate what he or she has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). The adolescent should also be able to use what he or she has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public

20

transportation). He or she should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). The adolescent should also learn to apply these skills in practical ways that will help the adolsecent enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).   C.F.R. § 416.926a(g)(2)(v).

The Regulations provide examples of limited functioning with respect to this domain. For example, a claimant might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and has difficulty explaining what he or she means.  20 C.F.R. § 416.926a(g)(3).

In this case, Ms. DeBoyoce, Claimant's teacher, assessed a serious problem with regard to Claimant's ability to provide organized explanations and adequate descriptions. (T at 102).  She further opined that Claimant had an "obvious problem" with respect to reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, and applying problem-solving skills in class discussions. (T at 102).

Ms. LaFever, Claimant's special education teacher, indicated at least slight problems in all aspects of this domain, with obvious problems comprehending oral instructions, understanding school and content vocabulary, and comprehending and doing math problems. (T at 125). Ms. LaFever's assessment is notable because, as referenced above,

21

her findings indicate that Claimant had obvious limitations even in a highly-restricted educational setting. (Ms. LaFever taught Claimant in a 5:1 setting for reading, 4:1 setting for math, and 15:1 setting for written language). (T at 124).   Moreover, Claimant's difficulties with the curriculum also become more significant when one considers that she was not being taught at grade level (while in 6th grade, Claimant received reading at the 4th grade level, with math and written language at a 5th grade level). (T at 124).

Ms. Baldner, the school counselor, indicated that Claimant had obvious problems comprehending oral instructions, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (T at 174).

In June of 2008, when Claimant was nearly 13, Dr. Schneider, her treating physician, indicated that Claimant could not remember details, had the communication skills of a 10 year old, the cognitive skills of a 9 year old, and the social/emotional skills of an 8 year old. (T at 181, 184).  Dr. Rigberg, the consultative examiner, described Claimant's abstract and concrete reasoning skills as "well below average." (T at 146). As noted above, Dr. Rigberg opined that the results of his evaluation were "consistent with cognitive problems that significantly interfere with [Claimant's] ability to function on a daily basis." (T at 147).

The ALJ found that Claimant had less than a marked limitation with regard to acquiring and using information. (T at 19).  In support of this finding, the ALJ referenced "achievement testing . . . consistent with fifth grade skills" and "wide variability in scoring," which, in the ALJ's opinion, was "consistent with learning disabilities." (T at 19).  The ALJ

22

also noted that there was "no evidence of mental retardation or significantly sub-average general intellectual functioning." (T at 19).

The ALJ's finding is not supported by substantial evidence. First, the ALJ did not adequately account for the assessments of Claimant's teachers, which indicated that Claimant had several obvious problems and at least one serious problem with regard to this domain. As discussed above, these limitations are even more significant when consideration is given to the fact that Claimant was receiving instruction in a highly-structured, restrictive environment, a fact the ALJ seems not to have accounted for, as required under the applicable standard. <u>See</u> C.F.R. § 416.924c.

Second, the ALJ did not reconcile his finding with Dr. Rigberg's assessment that Claimant's "cognitive problems . . . significantly interfere with [Claimant's] ability to function on a daily basis." (T at 147). This finding by the consultative examiner was indicative of a marked limitation with regard to acquiring and using information (among other things). At a minimum, the ALJ was obliged to address this finding and reconcile it with his conclusion that Claimant had a less than marked limitation in acquiring and using information.

Accordingly, this Court finds that the ALJ's conclusion that Claimant had less than a marked limitation with regard to acquiring and using information is not supported by substantial evidence and it is not clear that the ALJ applied the appropriate legal standard.

### iii.   Caring for Self

In this domain, the Commissioner considers the child's ability to "maintain a healthy emotional and physical state, including how well [he or she] gets physical and emotional wants and needs met in appropriate ways; copes with stress and changes in environment; and whether the child can take care of his or her own health, possessions, and living area.

20 C.F.R. § 416.926a(k).

With regard to this domain, a school-age child is expected to be independent in most day-to-day activities (*e.g.*, dressing, bathing), although the child may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he or she is competent in doing some activities and has difficulty with others. The child should begin to develop an understanding of right and wrong, and what is acceptable and unacceptable behavior. He or she should begin to demonstrate consistent control over behavior, and avoid behaviors that are unsafe or otherwise not beneficial. 20 C.F.R. § 416.926a(k)(2)(iv).

An adolescent should be able to feel more independent from others and should be increasingly independent in all day-to-day activities, should be able to express positive and negative feelings in an appropriate way, and begin to think seriously about future plans and what he or she will do when school is completed. 20 C.F.R. § 416.926a(k)(2)(v).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she continues to place non-nutritive or inedible objects in his or her mouth, often uses self-soothing activities showing developmental regression or has restrictive or stereotyped mannerisms, does not dress or bathe themself age appropriately; engages in self-injurious behavior or ignores safety rules, does not spontaneously pursue enjoyable activities or interests, and/or has a disturbance in eating or sleeping patterns.  20 C.F.R. §416.926a (k)(3).

In this case, Ms. DeBoyoce, Claimant's teacher, indicated no problems with regard to this domain. (T at 107).  Ms. LaFever, Claimant's special education teacher, assessed a serious problem with regard to taking care of personal hygiene and an obvious problem

handling frustration appropriately. (T at 129).  Ms. Baldner, the school counselor, noted that hygiene has been a "serious concern for years." (T at 178).  According to Ms. Baldner, Claimant does not bathe daily, brush her hair, and has "bathroom accidents" in school. (T at 178).  She does not adequately express her feelings and rarely requests help. (T at 178). Ms. Baldner assessed serious problems taking care of personal hygiene, identifying and appropriately asserting emotional needs, responding appropriately to changes in mood, using adequate coping skills to meet daily demands of the school environment, and knowing when to ask for help. (T at 178).

Dr. Schneider, the treating physician, assessed severely delayed social/emotional skills and noted the need for constant reminders to attend to all activities of daily living. (T at 183-84).  Dr. Rigberg, the consultative examiner, indicated that Claimant could perform most basic age-appropriate activities of daily living, but noted that she had no hobbies or special interest and did not know what she wanted to do for a career. (T at 146).

Plaintiff testified that Claimant needs constant reminders to attend to activities of daily living, including personal hygiene.  (T at 226).  She also explained that, while at school, Claimant would wet or soil herself if not permitted to use the bathroom on demand. (T at 225).  Plaintiff also described significant problems with regard to Claimant's ability to express her feelings and discuss problems (T at 224-25).

The ALJ concluded that Claimant had a less than marked limitation with regard to her ability to care for herself.  The ALJ noted that "some concerns have been voiced regarding personal hygiene," but found that the measures taken at school (which permit Claimant to use the bathroom as needed) were "expected to resolve this issue." (T at 23). The ALJ's conclusory assessment as to this domain is not supported by substantial

evidence.

Contrary to the ALJ's suggestion, the fact that Claimant, who was 13 at the time of the ALJ's decision, needed a special accommodation at school with regard to toileting is itself compelling evidence of a marked limitation in this area.  It is difficult to understand how the ALJ could conclude that an adolescent who soils herself unless she is permitted to go to the bathroom on command has a less than marked limitation with respect to caring for herself.  The ALJ also offers no support for his suggestion that this "measure" (*i.e.* allowing Claimant to use the bathroom whenever she wants) is "expected to resolve the issue."  Indeed, it would seem that permitting Claimant to use the bathroom on command simply addresses the symptom without taking any action to address the underlying question of why this young girl soils herself if not allowed to use the bathroom.

In addition, the ALJ took no apparent account of the evidence concerning Claimant's limitations with regard to expressing her thoughts and feelings in an appropriate way,  an important part of the functioning expected with respect to this domain. 20 C.F.R. § 416.926a(k).  Moreover, the testimony from Plaintiff and report from Claimant's treating physician indicated that Claimant was not independent in her activities of daily living and required constant reminders to attend to very basic activities such as dressing and self-cleaning.  The ALJ limited his discussion to the question of hygiene at school and made no attempt to reconcile his finding with evidence of significant limitations outside of the structured educational environment.

Accordingly, this Court finds that the ALJ's conclusion that Claimant had less than a marked limitation with regard to caring for herself is not supported by substantial evidence and it is not clear that the ALJ applied the appropriate legal standard.

### iv.    Summary

In sum, even assuming *arguendo* the ALJ was correct in concluding that Claimant's impairments did not meet or medically equal Listing § 112.05 (C) and/or (D), his decision still cannot be sustained because his functional equivalence assessment is not supported by substantial evidence.  To wit, the ALJ did not adequately consider all of the evidence, including, in particular, evidence concerning Claimant's abilities outside of the highly-structured educational environment (*e.g.* Plaintiff's testimony and the treating physician's assessment) and did not make any meaningful attempt to reconcile that evidence with his functional equivalence findings.

Further, the ALJ did not sufficiently account for the fact that the limitations assessed by Claimant's teachers were actually more significant when consideration is given to the highly-restricted educational environment in which Claimant was placed.  In other words, the persistence of an "obvious" problem in a 5:1 or 4:1 setting is strongly suggestive that the overall limitation in that area is more than marked.  It is not at all clear that the ALJ considered this fact in rendering his decision.

Accordingly, this Court finds that the ALJ's functional equivalence assessment was not supported by substantial evidence and it is not clear that he employed the appropriate legal standard. See, e.g. Smith v. Massanari, No. 00-CV-0402C, 2002 WL 34242378, at *6 (W.D.N.Y. Mar. 17, 2002)("For these reasons, I find that the ALJ erred in failing to fully and properly consider the effects of Eric's structured educational placement on his overall functioning, as required by § 416.924c of the Commissioner's regulations. Therefore, the ALJ's decision was based on an erroneous application of the law, with the result that highly probative evidence relating to Eric's claim was improperly disregarded.")

### 3.      Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

The record contains two verbal IQ scores sufficient to satisfy the requirements of Listing § 112.05 (C).  The ALJ's decision does not adequately address this evidence and the Commissioner's *post hoc* rationalizations are unpersuasive.  The record also contains compelling evidence that Claimant's impairments meet or medically equal Listing § 112.05 (D).  In addition and in the alternative, the record contains persuasive proof of Claimant's marked limitation of functioning in at least three of the domains identified under 20 C.F.R. § 416.926a.

Plaintiff's application for benefits on behalf of Claimant has been pending for more than five (5) years.  Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." Nieves ex rel. Nieves v. Barnhart, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004)

(citing <u>Maldonado v. Apfel</u>, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." <u>Molina v. Barnhart</u>, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay.  Accordingly, it is recommended that a remand be ordered solely for the calculation of benefits.


## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge


Dated:   June 29, 2011

29

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

30

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 29, 2011

Victor E. Bianchini
United States Magistrate Judge

31